**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:  (213) 401-0311
Email:  mdb@kuzykclassactions.com

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (pro hac vice pending)
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHELSEA GARLAND on behalf of herself and all others similarly situated,**<br><br>                            **Plaintiff,**<br>v.<br><br>**JOHNSON & JOHNSON CONSUMER, INC.**<br><br>                            **Defendant** | **CASE NO.:** '24CV1795 BAS JLB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Chelsea Garland ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Johnson & Johnson Consumer, Inc. ("J&J" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## **INTRODUCTION**

1.      This is a proposed class action on behalf of a nationwide and California class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Neutrogena Makeup Remover Cleansing Towelettes ("Products" or "Towelettes"). [1]

2.      The principal display of the Product describes its contents as "25 Plant-Based Compostable Towelettes."



---

[1] Class Products include: Makeup remover Ultra Soft Cleansing Towelettes and Hydro Boost Cleansing Towelettes.

3.     Despite promising consumers that the towelettes are Plant-Based, an analysis of its ingredients reveals that the majority of them (13 of 15 ingredients) are actually synthetic, **non**-plant based ingredients including the following: decyl isostearate, isopropyl isostearate, dimethicone, isohexadecane, hexylene glycol, peg-6 caprylic/capric glycerides, trisiloxane, phenoxyethanol, sucrose cocoate, chlorphenesin, polysorbate 20, acrylates/c10-30 alkyl acrylate crosspolymer, and sodium hydroxide. By weight, these ingredients make up the 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th and 13th most prominent ingredients in the Product.



4.     Defendant is a sophisticated market participant and knows that consumers are willing to pay more for products that are plant-based because they are perceived as healthier alternatives to similar products that contain synthetic chemicals. Indeed, Defendant advertises the Product with the clear intention that consumers rely on the plant-based representation.

5.      Reasonable consumers such as the Plaintiff do not have specialized knowledge or the scientific understanding necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised Plant-Based claim.

6.      By falsely labeling its Products as being Plant-Based, Defendant has profited from consumers' preference for natural, clean and environmentally friendly products.

7.      Throughout the applicable Class Periods (defined below), Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and the United States.

8.      Plaintiff alleges that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Garland is a resident of San Diego, California and Defendant Johnson & Johnson is Delaware corporation with its principal place of business in Skillman, New Jersey. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district.

## **PARTIES**

11.     Plaintiff Chelsea Garland is a resident of San Diego, California.

12.     Ms. Garland purchased Defendant's Products approximately every 3 months beginning in March 0f 2022 from retail stores such as Target, CVS and Walmart located in Temecula and San Diego California.

13.     Ms. Garland made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product consisted of Plant-Based towelettes and was otherwise devoid of synthetics.

14.     Ms. Garland believed the representations on the Product's label that, among other things, it consisted of Plant-Based towelettes.

15.     Ms. Garland believed that Defendant lawfully marketed and sold the Products.

16.     Ms. Garland relied on Defendant's labeling and was misled thereby.

17.     Ms. Garland would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth – *i.e.,* that the Product was not composed entirely of water and plant-based ingredients, but instead contained ingredients that were artificial, synthetic, and/or highly processed.

18.     Ms. Garland was injured in fact and lost money as a result of Defendant's improper conduct.

19.     Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive

and/or misleading under California law and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

20.    Defendant Johnson & Johnson Consumer, Inc. specializes in the research and development of products for newborns, babies, toddlers, and mothers, including cleansers, skin care, moisturizers, hair care, diaper care, sun protection, and nursing products. It is incorporated in Delaware and headquartered in Skillman, New Jersey. It is a subsidiary of Johnson & Johnson, a publicly traded multinational pharmaceutical, biotechnology, and medical technology corporation.

## GENERAL ALLEGATIONS

### A.    Market for Plant-Based Consumer Products

21.    "Plant-based skincare products are those that are completely made from plant-derived materials and are free from any synthetic or animal-based materials.[2]

22.    Consumers preference for natural ingredients from plants, minerals, and naturally occurring substances has been steadily growing given increasing consumer consciousness over potential side effects from and environmental concerns related to synthetic chemicals, preservatives, and additives.

23.    Indeed, by 2023 the plant-based skincare market was worth $789.75 million and is projected to grow to $1.62 billion in the next 10 years. The demand for plant-based personal care products is driven by key factors including health consciousness and environmental considerations.

---

[2] *Plant-based Skincare Products Market 2023-2033,* Fact.Mr. Available at https://www.factmr.com/report/plant-based-skincare-products-market#:~:text=Worldwide%20demand%20for%20plant%2Dbased,growth%20of%20US%24%20208 37.95%20million. (last visited 10-1-24).

24.     Synthetic chemicals, preservatives, and additives are often used in cosmetics to ensure durability and prevent spoilage, but they can have negative impacts on health and the environment. Many consumers perceive plant-based products as safer, particularly those with sensitive skin or specific allergies. Increasing awareness of the potential health risks associated with synthetic chemicals in personal care products has been a significant driver of plant-based alternatives. [3]

25.     Consumers are also increasingly environmentally aware and conscious, seeking to reduce their impact on the planet by choosing natural cosmetics with minimal synthetic ingredients and sustainable packaging. *Id.*

26.     In response to consumers' desire for plant-based and natural products, many companies, like Defendant, have aggressively marketed their products as being natural, plant-based and environmentally friendly in order to capture this burgeoning market. Unfortunately, rather than truly creating the plant-based products that consumers desire, Defendant has just repackaged a principally synthetic product and deceptively marketed it as "plant-based," thereby misleading reasonable consumers and violating the law.

**B.     Green Washing**

27.     Greenwashing refers to the practice where companies make misleading or unsubstantiated claims about the environmental benefits of a product, service, or their overall practices. It is the process of conveying a false impression or misleading information about how a company's products are environmentally sound. This is done

---

[3] *Natural Cosmetics Market size is set to grow by USD 45.37 billion from 2024-2028, Growing consumer demand for chemical-free and environment-friendly natural cosmetics products boost the market,* Technavio, PR Newswire, August 6, 2024. Available at https://www.prnewswire.com/news-releases/natural-cosmetics-market-size-is-set-to-grow-by-usd-45-37-billion-from-2024-2028--growing-consumer-demand-for-chemical-free-and-environment-friendly-natural-cosmetics-products-boost-the-market-technavio-302214521.html. (last visited 10-1-24).

to appear more environmentally friendly than they actually are, and to attract environmentally conscious consumers.[4]

28.    In an effort to protect consumers from greenwashing, the U.S. Federal Trade Commission ("FTC") promulgated the Green Guides, 16 CFR Part 260, to help marketers avoid deceptive environmental claims. The Green Guides explain that "a representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims." (internal citations omitted) §260.2.

29.    The Guides consist of general principles, specific guidance on the use of particular environmental claims, and examples on how reasonable consumers likely interpret certain claims. §260.1(d).

30.    They urge manufacturers to use packaging and advertising that explain the product's green claims in plain language and readable type in close proximity to the claim; specify whether the claim refers to the product, the packaging, or just a portion of the product or package; and not overstate, directly or by implication, the environmental attributes or benefits of a product. §260.3.

31.    Among its examples, the Green Guides specifically call out "plant-based" claims stating that "[m]arketers… are responsible for substantiating consumers' reasonable understanding of …. "plant-based," in the context of their

---

[4] https://en.wikipedia.org/wiki/Greenwashing;
https://www.investopedia.com/terms/g/greenwashing.asp (last visited 10-1-24).

advertisements."[5] Its specific inclusion in the Green Guides demonstrates both the materiality of "plant-based" claims to reasonable consumers, and Defendant's deceptiveness in claiming its Products to be plant-based, despite the fact they are rife with synthetic and highly processed ingredients.

## C.    Defendant's Product

32.    Defendant claims that its Product is Plant-Based yet 13 of its 15 ingredients are synthetic.

a.  **Acrylates/C10-30 Alkyl Acrylate Crosspolymer** is a synthetic polymer used in cosmetics and personal care products. It functions primarily as a thickening agent and emulsion stabilizer, helping to mix oil and water phases to create a uniform consistency. It is commonly found in products like gels, creams, and sunscreens due to its ability to increase viscosity and stabilize emulsions.

b.  **Chlorphenesin** is a synthetic preservative used in cosmetics and personal care products. It functions primarily as a biocide, providing antibacterial and antifungal properties to help preserve formulations. It can cause allergic contact sensitivity in some individuals.

c.  **Decal isostearate** is a synthetic compound used in cosmetics and personal care products as an emollient, skin conditioning agent, and thickening agent. Its primary function is to provide a smooth application and enhance the texture of formulations, making them feel more luxurious on the skin.

---

[5] 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-greenguides/greenguidesstatement.pdf (last visited 10-1-24).

d. **Dimethicone** is a synthetic silicone polymer used widely in cosmetics and personal care products. Dimethicone forms a protective barrier on the skin or hair, reducing moisture loss and improving texture.

e. **Hexylene glycol** is a synthetic compound used in various applications, including cosmetics, where it acts as a solvent, humectant, viscosity-controlling agent, and preservative booster.

f. **Isohexadecane** is a synthetic ingredient used in cosmetics and personal care products. It functions as an emollient, solvent, and texture enhancer. Isohexadecane provides a light, non-greasy feel and is commonly used in products for oily skin due to its dry finish.

g. **Isopropyl isostearate** is a synthetic ester made from isopropyl alcohol and isostearic acid, a type of fatty acid. It is used in cosmetics and skincare products as an emollient and lubricant, providing easy spreading and a smooth feel without a greasy residue.

h. **PEG-6 Caprylic/Capric Glycerides** is a synthetic ingredient used in cosmetics. It functions primarily as a surfactant and emulsifier, helping to blend oil and water components in formulations.

i. **Phenoxyethanol**: is a glycol ether used as a preservative used in personal care products. It serves primarily to prevent the growth of bacteria, yeast, and mold and to extend the shelf life of products. It is a synthetic, chemically produced by reacting phenol with ethylene oxide.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

j. **Polysorbate 20** is a synthetic nonionic surfactant and emulsifier. It is created through the ethoxylation of sorbitan monolaurate, resulting in a compound that helps to stabilize and blend ingredients in various formulations, such as cosmetics, pharmaceuticals, and food products.

k. **Sodium hydroxide** is a synthetic inorganic compound used in consumer products primarily as a pH adjuster, allowing the effective break down and removal of grease, fats, and oily substances due to its strong alkaline nature.

l. **Sucrose cocoate** is a compound derived from the esterification of sucrose and fatty acids from coconut oil. It is primarily used as a mild surfactant and emulsifier in cosmetic formulations, providing conditioning properties and enhancing the texture of products like shampoos and body washes. Although sucrose cocoate is made from natural ingredients, it is chemically processed to create the final product rendering it a synthetic.

m. **Trisiloxane** is a synthetic compound used in various applications, including cosmetics and personal care products. It functions as an antifoaming and skin conditioning agent.

33.    By representing the Product is "Plant-Based" Defendant seeks to capitalize on consumer preference for natural, clean label, environmentally friendly and healthful products. By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

34.    As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

## REASONABLE CONSUMER

35.   In light of the Plant-Based representations, reasonable consumers, including Plaintiff, believed the Products only contain ingredients that come from plants and/or from plants and minerals and that are not synthetic, nor subject to chemical modification or processing, which materially alters the ingredients' original plant-based composition. As such, reasonable consumers, including Plaintiff, believe that in addition to water, the Products contain only plant-based ingredients.

36.   The representations are false and deceptive because the Products are not entirely plant-based—meaning that the Products are not exclusively comprised of water and plant ingredients. Instead, they principally contain ingredients (13 out of 15) that are not water, do not come from plants, and instead are synthetic and/or substantially processed.

37.   Reasonable consumers such as Plaintiff do not have the specialized knowledge to enable them to discern whether such ingredients come from plants or were otherwise synthesized and/or substantially processed so as to materially alter any original plant composition.

## NO ADEQUATE REMEDY AT LAW

38.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

39.   The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein.

40.     Defendant continues to misrepresent the Product claiming they are plant-based thereby necessitating injunctive relief in order to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

41.     Finally, this is an initial pleading. The adequacy and availability of all remedies, including legal and equitable, will not be resolved until the case is further advanced upon the closure of discovery, resolution of class certification and any potential summary judgment.

## **ECONOMIC INJURY**

42.     Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

43.     Plaintiff saw and relied on Defendant's misleading labeling of its Products.

44.     J&J guaranteed, and Plaintiff believed, that the purchased Products consisted principally of Plant-Based Towelettes.

45.     Plaintiff believed that the Products were lawfully marketed and sold.

46.     In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid a price premium.

47.     As a result of her reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which she reasonably believed they did not contain.

48.     Plaintiff received Products that were unlawfully marketed and sold.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

49.    Plaintiff lost money and thereby suffered injury as she would not have purchased these Products and/or paid as much for them absent the misrepresentation.

50.    Defendant knows that the claim "Plant-Based" is material to a consumer's purchasing decision.

51.    Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Products she purchased, and/or in additional amounts attributable to the deception.

52.    By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

53.    Plaintiff, however, would be willing to purchase products labeled as plant-based towelettes again in the future, including Defendant's Product, should she be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

54.    However, Plaintiff will not be able to purchase Defendant's Product in the future, even though Plaintiff would like to, since simply viewing the ingredient list on Defendant's Product that displays the wording "plant-based" on the label may not be enough to prevent Plaintiff from being deceived by Defendant's Product since it will not afford Plaintiff the opportunity to quickly and easily view and understand the ingredient list before purchasing the Product to determine whether any of the ingredients in the Product are not plant-based, especially because Plaintiff, as a reasonable consumer, does not have the scientific background or knowledge to view the ingredient list to determine whether a particular ingredient is plant-based, synthetic or otherwise.

## **CLASS ACTION ALLEGATIONS**

55.    Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

> a.  **California:** All persons in California who purchased the Class Products in California during the Class Period; [6]
>
> b.  **National:** All persons in the United States who purchased the Class Products in the United States during the Class Period;
>
> c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[7]

56.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

57.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

58.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

59.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

---

[6] Collectively referred to as "Class or Classes."

[7] The statute of limitations for Plaintiff' claims under California Civil Code § 1750, *et seq*., and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years prior to the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years prior to the date of filing to the present.

60.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.    Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b.    Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.    Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.    Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f.    Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g.    Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h.    Whether Defendant's actions constitute breach of express warranty;

i.    Whether Defendant should be enjoined from continuing the above-described practices;

j.    Whether Plaintiff and members of the Class are entitled to declaratory relief; and

k.    Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

61.    Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a consumer who purchased Defendant's Product. Plaintiff is no different in any

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

62.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

63.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

64.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

65.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty**
**Cal. Com. Code §2313**

66. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

67. Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased were Plant-Based.

68. The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

69. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

70. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

71. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

72.     Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.**
**(On behalf of the California Class)**

73.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

74.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

75.     A business act or practice is "unlawful" if it violates any established state or federal law.

76.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

> a. 21 U.S.C. §362: A cosmetic shall be deemed to be misbranded—
>    (a) If its labeling is false or misleading in any particular.

77.     California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant

to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

78. Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), including, but not limited to, the following sections:

79. Section 111730: A cosmetic is misbranded if its labeling is false or misleading in any way.

80. Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

81. Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

82. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, et seq.

83. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

84. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions,

1    and to enjoin Defendant from continuing to violate the Unfair Competition Law or

2    violating it in the same fashion in the future. Otherwise, the Class may be irreparably

3    harmed and denied an effective and complete remedy if such an order is not granted.

4

5

6                          **THIRD CAUSE OF ACTION**
                            **Unfair Business Practices**
7                   **Violation of The Unfair Competition Law**
                    **Bus. & Prof. Code §§ 17200, *et seq.***
8                    **(On behalf of the California Class)**

9

10        85.    Plaintiff incorporates each and every allegation contained in the

11   paragraphs above as if restated herein.

12        86.    The UCL defines unfair business competition to include any "unlawful,

13   unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

14   misleading" advertising. Cal. Bus. Prof. Code §17200.

15        87.    A business act or practice is "unfair" under the Unfair Competition Law

16   if the reasons, justifications and motives of the alleged wrongdoer are outweighed by

17   the gravity of the harm to the alleged victims.

18        88.    Defendant has violated, and continues to violate, the "unfair" prong of

19   the UCL through its misleading description of the Products. The gravity of the harm to

20   members of the Class resulting from such unfair acts and practices outweighs any

21   conceivable reasons, justifications, or motives of Defendant for engaging in such

22   deceptive acts and practices. By committing the acts and practices alleged above,

23   Defendant engaged, and continued to engage, in unfair business practices within the

24   meaning of California Business and Professions Code §§17200, *et seq.*

25        89.    In accordance with California Business & Professions Code section

26   17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining

27

28

Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

90.     Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FOURTH CAUSE OF ACTION**
**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of the California Class)**

91.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

92.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

93.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

94.     Defendant's acts and practices of mislabeling its Products in a manner to suggest they are plant-based.

95.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the

proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

96.    In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

97.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**
**False Advertising**
**Violation of California Business & Professions Code §§ l7500, *et seq.***
**(On behalf of the California Class)**

98.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

99.    Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

100.   In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

101.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

102.   Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

103.  As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched and pray for relief as set forth below.

104.   Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

105.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

106.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

107.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

108.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

109.    Defendant has violated, and continue to violate, the CLRA in at least the following respects:

      a.  §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

      b.  §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

      c.  § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

110.    Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

111.    The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which

formed a material basis for their decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

112.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

113.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

114.    Plaintiff served a CLRA demand pursuant to Civil Code §1782 in conjunction with this Complaint notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendant fails to address Plaintiff's demands within 30 days, Plaintiff will amend the Complaint and seek the full measure of damages as provided under Civil Code §1780.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## SEVENTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

115.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

116.    Plaintiff pleads this cause of action in the alternative.

117.    Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

118.    Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.  It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

119.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

# **PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.     Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Statutory penalties for Causes of Action for which they are available.

E.     Punitive Damages for Causes of Action for which they are available.

F.     A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.     An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.     Such other and further relief as may be deemed necessary or appropriate.

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: October 7, 2024                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:   (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*